## SAMUEL HERRING *v.* JAMES H. JESTER.

In an action by a father for the seduction of his daughter, if she was of age at the time, the loss of some actual service on her part by the father, in consequence of it, must be proved to maintain it; but any service, however slight, will be sufficient for this purpose. This however, is but the basis on which the action is founded; for the jury in estimating the injury sustained by him, may take into consideration, the wounded feelings and affections of the parent, the wrong done to him in his domestic and social relations, the stain and dishonor brought upon his family, and the grief and affliction which he may have suffered in consequence of it, and award damages, accordingly; but exemplary, or vindictive damages, as they are called, are only proper in cases characterized by circumstances of gross aggravation, or enormity, and are not to be allowed in ordinary cases and in the absence of such circumstances.

It may be proved in what manner and on what terms the defendant visited the daughter, the family and her relations; but not that he visited her with a view to marriage, or that he made her any promise of marriage.

The pecuniary means and fortune of the defendant may also be proved in the action, with a view to the assessment of damages.

But evidence as to the general character of the defendant, is not admissible in the action.

This was an action on the case by Samuel Herring against James H. Jester, for the seduction of his daughter. There were two counts in the narr, one alleging the seduction to have been of the daughter and servant, and the other of the daughter merely, of the plaintiff. The action was commenced on the 22nd of March 1858.

The party referred to was produced and examined as a witness, and proved that she was the daughter of the plaintiff, that she was born on the 25th day of September 1835, and had always lived with her father and performed all kinds of house work in the family. Also her seduction by the defendant, and that he was the father of the child to which she gave birth on the 17th of March 1857; that their connection commenced in June 1856, and that he was then a frequent visitor at her father's house and the relations between him and the family were intimate and friendly.

The counsel for the plaintiff then propounded the following question to her: "Was he then paying his addresses to you with a view to marriage?"

*C. S. Layton,* for the defendant, objected to the question. It was not competent in this action, which was by the father to recover damages for the seduction merely, to prove a promise of marriage, or a breach of promise of marriage by the defendant, and yet, what could be the object of the enquiry, but to prove a promise of marriage, or the breach of such a promise? That the present plaintiff could not do, because it might be the ground of an action by the witness herself against the defendant, provided she could establish it, to recover damages for the breach of such a promise.

*E. D. Cullen,* for the plaintiff: It might be proved in this action on what terms the defendant visited the house of the father of the witness, and that he was addressing her with the intention of marrying her. 2 *Greenl. Ev.* Sec. 577. *Elliott v. Nicklin,* 5 *Price, Exchq. Rep.* 641.

*Layton,* in reply, cited *Robinson v. Burton,* 5 *Harr.* 335.

*By the Court*: The question as propounded, is not admissible. It may be proved, however, in what manner and on what terms the defendant visited the daughter and the family and her relations; but it cannot be asked of the witness if he visited her with a view to marriage, as that would be a matter of opinion and in regard to which there might be a misapprehension on her part. The witness should speak of facts and leave the jury to draw the inference. We do not, however, understand the object of the enquiry to be to prove a promise of marriage by the defendant; for that cannot be done, and was so held by this Court in the case just cited, of *Robinson v. Burton.* But in that case the Court allowed the counsel for the plaintiff to put the question to the witness, if the defendant had asked her to marry him.

The witness then proceeded and stated that the defendant frequently rode with her and once took her to a party; and he had said to her that he loved her.

Another witness was then called for the plaintiff, to whom the counsel put the question, how much was the defendant worth? To which Mr. Layton objected, and was proceeding to argue against its admissibility.

*By the Court*: If the counsel has any authorities to cite in support of his objection, the Court will hear them; otherwise, we are not inclined to listen to any argument, but shall feel ourselves bound to adhere to our own decisions on the question, which have ruled that such testimony is admissible.

The counsel for the plaintiff failed to prove by the witness what the defendant was worth, and then gave in evidence the record of a deed to him for a farm worth $3000,00 and proved that he had sold and conveyed it to other persons after the commencement of this suit; and rested his case.

For the defendant it was proved that he had bought the farm on credit and still owed nearly the whole price which he was to pay for it and that there were executions and attachments against him to the amount of all he was worth. That his general employment was that of a teacher of district schools, and that at the time of the alleged seduction and of the birth of the child of the principal witness, he was so engaged near the residence of the plaintiff, who had a son and an indentured apprentice going to school to him, and who still continued pupils in his school until some time after the latter occurrence, and until a difficulty arose about a different matter, between the defendant and the son of the plaintiff, in consequence of which the latter had been expelled by the commissioners from the school; and that the plaintiff had declared that he should not have sued him in this action, but for that difficulty in the school, and that it was not instituted until more than a year after the birth

of the child, and not until after the defendant had married another woman. The counsel for the defendant then proposed to prove his general character.

*But the Court*, on objection being made, refused to admit the evidence ; because his character was not in issue, and it was not a proper subject of enquiry in the case.

The attempt was also made to impeach the previous character of the daughter for chastity, and to prove that another person was the father of her child; but the evidence failed on both points.

*The Court, Gilpin Ch. J., charged the jury* : That when the daughter seduced, is a minor under the age of twenty one years and is residing at the time with her parent, the law presumed service because she owed it to him, and he might maintain an action for her seduction, without any proof of actual service by her; but when the daughter was over that age at the time of her seduction and was living with her father, as had been proved in the present case, then some proof of actual service, and the loss of it by reason of her seduction, was necessary to entitle him to recover damages for it. But any service rendered him in his family, or otherwise, by her, however slight, would be sufficient for this purpose; and would entitle him at least, to nominal damages. This however, was but the basis on which the action of the parent in such cases, was founded in law ; for this being proved, the jury in estimating the injury sustained by the father in such a case, may very properly take into consideration the wounded feelings and affections of the parent, the wrong done to him in his domestic and social relations, the stain and dishonor brought upon his family, and the grief and affliction which he may have suffered in consequence of it; and thus estimating the injury to his character and feelings, the jury may give him such damages as they may consider a fair and just equivalent and atonement for such an injury, under all the circum-

stances proved before them in the suit.  In aggravated, or extraordinary cases of seduction, there is, it is true, another measure, or standard of damages above and beyond this, usually called exemplary, or vindictive damages, which in a proper case the jury may allow, if in their opinion the grossness, or enormity of the wrong under the circumstances attending it, should require that something more than a full pecuniary compensation to the parent merely, for the injury done him, should be awarded by them, and that an example, as it is termed, should be made of the case to punish the defendant and deter others from the commission of the like offence. And in such cases the damages which may be assessed and allowed by the jury, are termed exemplary, vindictive, or punitive damages, and sometimes "sweat money," or " smart money" in the books.  The Court, however, felt bound to say to the jury before disposing of the case, that it had failed to discover any such incident, or quality of gross aggravation in the circumstances attending it, as would require the jury to return a verdict for such damages in the present action, provided they should be of opinion under all the facts proved, that the plaintiff was entitled to recover.

Verdict for the Plaintiff, damages $1000,00.

*Smithers, Comeygs, and E. D. Cullen,* for the plaintiff.

*W. Saulsbury, Fisher and C. S. Layton,* for the defendant.